UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY BRESSI, et al.,

        Plaintiffs,

                                            File No. 1:12-CV-736

v.

                                            HON. ROBERT HOLMES BELL

ELENBAAS STEEL SUPPLY CO.,

        Defendant.
                                     /

**O P I N I O N**

        This diversity personal injury action is before the Court on cross-motions for partial summary judgment (Dkt. Nos. 40, 43) and on a motion to intervene filed by the Ohio Bureau of Workers' Compensation (Dkt. No. 65). For the reasons that follow, the motion to intervene will be granted, Plaintiffs' motion for partial summary judgment on Defendant's affirmative defense of tort immunity under the no-fault law will be granted, and Defendant's motion for partial summary judgment will be denied.

I.

        On July 9, 2010, Plaintiff Anthony Bressi delivered a load of steel sheets from Olympic Steel in Cleveland, Ohio to Elenbaas Steel Supply Co. in Greenville, Michigan. Bressi worked for Bralyn Trucking Co., located in Ohio. Bralyn owned the tractor and trailer driven by Bressi and provided insurance for it.

        As Ken Larsen, an Elenbaas employee, was using a forklift to unload the steel sheets

from the trailer, the load fell off the forklift and onto Bressi. Bressi sustained injuries, including the partial amputation of his left leg and severe crush injuries to his right leg. The Ohio Bureau of Workers' Compensation ("OBWC") has paid Bressi medical benefits and indemnity compensation as a result of Bressi's injuries.

Bressi and his wife Jamie Bressi filed this action against Elenbaas alleging negligence and loss of consortium. Defendant Elenbaas asserts, as affirmative defenses, that Plaintiff's claims are barred by the no-fault act or by the collateral source rule. The parties have filed cross-motions for partial summary judgment on the application of Michigan's no-fault act and the collateral source rule. The OBWC moves to intervene to assert its statutory right to reimbursement from any recovery before any moneys are paid to Plaintiffs.

## II.

The OBWC moves to intervene as a matter of right pursuant to Rule 24(a)(2). because Defendant's argument that the collateral source rule should be applied to reduce any potential judgment by the amount of workers' compensation benefits paid would eliminate the OBWC's reimbursement rights.

The Federal Rules of Civil Procedure provide:

On timely motion, the court **must** permit anyone to intervene who:

. . .

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added).

The OBWC has presented evidence that it has paid and continues to pay benefits to Plaintiff Bressis as a result of injuries arising out of the July 9, 2010 accident, and that to date it has paid $271,737.93 in medical benefits and $174,612.75 in indemnity benefits. The OBWC contends that it is entitled by law to a lien against Plaintiffs' proceeds pursuant to Ohio Rev. Code. § 4123.931, and that the collateral source rule accordingly does not apply.

Plaintiffs agree that the issue of collateral source should not be decided without letting the OBWC intervene in this litigation. (Dkt. No. 53, Pls. Br. in Opp. 15.) Defendant, on the other hand, opposes intervention on the basis that it is not necessary and would delay the litigation. (Dkt. No. 59, Def.'s Reply 20-21.)

The Court finds that the OBWC is a necessary party. The OBWC is so situated that disposing of this action may impair or impede its ability to protect its interests. The Court further finds that because the existing parties have diverging interests, they will not adequately represent the OBWC's interests. Moreover, allowing the OBWC to intervene will not delay the litigation because the OBWC's rights are derivative of Plaintiff's rights and will not be enforced until after a verdict or settlement is entered with respect to Plaintiffs' underlying claims. Accordingly, as noted on the record at oral argument on June 10, 2013, the motion to intervene is granted.

**III.**

Plaintiffs and Defendant have filed cross-motions for summary judgment on the issues

of no-fault immunity and application of the collateral source rule.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the movant carries its burden of showing there is an absence of evidence to support a claim, the non-movant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of the non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

**A. No-Fault Act**

In answer to Plaintiffs' complaint, Defendant has asserted, as an affirmative defense,

that Plaintiffs' claim is barred, in whole or in part, by the applicable provisions of the Michigan no-fault act, Mich. Comp. Laws § 500.3101, *et seq*. (Dkt. No. 5, Answ.) Plaintiffs move for summary judgment on Defendant's no-fault immunity defense. Defendant has filed an affirmative cross-motion for summary judgment, seeking a determination that it is partially immune from tort liability based on the no-fault act.

The Michigan no-fault act provides that "tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101 was in effect is abolished" except as to certain noted exceptions, including intentionally caused harm and noneconomic loss. Mich. Comp. Laws § 500.3135(3). The parties' cross-motions require the Court to determine whether the Michigan no-fault act bars a claim for damages against a company for injuries sustained by a non-employee when the company's forklift operator was unloading a third-party's trailer.

In *Citizens Insurance Co. of America v. Tuttle*, 309 N.W.2d 174 (Mich. 1981), the Michigan Supreme Court held that "the no-fault act was not intended to work a comprehensive abolition of all tort liability incident to a motor vehicle accident." *Id.* at 177. "The abolition of tort liability for injuries or damages caused by (arising from) the ownership, maintenance or use of a motor vehicle . . . does not abolish the tort liability of the non-motorist tortfeasor." *Id.* In *Tuttle*, the court held that where defendant Tuttle's cow ran into the street and caused a motor vehicle accident, Tuttle's liability for the accident was not abolished by the no-fault act. The court reasoned that the wrongful act (Tuttle's improper

5

keeping of his cow), does not relate to the ownership, maintenance or use of a motor vehicle. *Id.*

Plaintiffs contend that the partial abolition of tort liability under the no-fault act does not apply to this case because the accident was caused by the use of a forklift, and forklifts are not motor vehicles under Michigan law. *See* Mich. Comp. Laws § 257.33 (defining "motor vehicle" as "every vehicle that is self-propelled," but excluding "industrial equipment such as a forklift . . . that is not subject to registration under this act"). Plaintiffs contend that because Defendant's employee was operating a forklift, he was a non-motorist tortfeasor whose tort liability has not been abolished by the no-fault act.

Defendant admits that the general use of a forklift on private property would not constitute the use of a motor vehicle under the no-fault act. Defendant contends, however, that its liability, if any, arises out of the unloading of a motor vehicle (the trailer), and that under Michigan law, the loading and unloading of a motor vehicle constitutes the use of that motor vehicle and triggers the application of the no-fault act. In support of this argument Defendant cites *Goodwin & Bigelow Constr. Inc. v. CH&P Drilling* Co., No. 175953, 1996 WL 33364141 (Mich. Ct. App. June 6, 1996). In *Goodwin*, the court held that "where defendant's alleged negligence was related to the unloading of defendant's truck," the defendant was not a true nonmotorist, and the accident, which occurred during the unloading process, arose out of the use of a motor vehicle as a motor vehicle. *Id.* at *1.

*Goodwin* involved the defendant's unloading of the defendant's own truck. *Id.*

6

Defendant's argument for immunity under the no-fault act based on the unloading of the trailer might be viable if Defendant owned the trailer and had purchased no-fault insurance on the trailer. But those are not the facts of this case. This case is distinguishable from *Goodwin* because Defendant did not own or insure the trailer.[1] The trailer was owned by Bralyn and insured by Acuity, under a policy purchased by Bralyn. Defendant has cited no case where a similarly situated defendant was entitled to no-fault immunity.

In response, Defendant notes that the no-fault statute simply requires that "the security required by section 3101" be in effect. Mich. Comp. Laws § 500.3135(3). Defendant contends that the security requirement has been met, as evidenced by the fact that Plaintiff has received no-fault insurance personal injury protection ("PIP") benefits under the Acuity policy that covered the trailer. According to Defendant, under the plain language of the statute, it does not matter which vehicle was insured, as long as no fault insurance was in effect as to at least one of the vehicles involved in the accident.

The Court is not persuaded by Defendant's argument. The Michigan Supreme Court has explained that the no-fault act's grant of immunity from tort liability goes hand-in-hand with the purchase of no-fault insurance:

---

[1] *Goodwin* relied on *Bialochowski v. Cross Concrete*, 407 N.W.2d 355 (Mich. 1987), and *Gordon v. Allstate Ins. Co.*, 496 N.W.2d 357 (Mich. Ct. App. 1992), in support of its determination that unloading a trailer constitutes use of a motor vehicle. *Goodwin*, 1996 WL 33364141 at *1. It is questionable whether *Bialochowski* and *Goodwin* represent valid law in light of the fact that their multi-purpose theory of motor vehicle use has been "essentially overruled" by *McKenzie v. Auto Club Ins. Ass'n*, 580 N.W.2d 424 (Mich. 1998). *Rice v. Auto Club Ins. Ass'n*, 651 N.W.2d 188, 193 (Mich. Ct. App. 2002).

> [S]ubsection (2) [now codified as subsection (3)] abolishes tort liability arising from the ownership, maintenance or use only of vehicles for which the required no-fault insurance or other security has been obtained. The policy apparently expressed in so conditioning the abolition of tort liability upon the obtaining of no-fault coverage is that **a person is to be relieved of tort liability only upon participating, through the payment of premiums, in a system for spreading the costs of compensating vehicular injuries without regard to fault**. To extend the abolition of tort liability to non-motorist tortfeasors would be to incorporate into the no-fault system the costs of providing personal protection insurance benefits to motorists, passengers and pedestrians injured by non-motorist tortfeasors without incorporating offsetting premiums from non-motorist tortfeasors, since non-motorist tortfeasors are not required to purchase no-fault insurance with respect to their conduct as non-motorists

*Tuttle*, 309 N.W.2d at 178 (emphasis added) (footnote omitted). "The non-motorist tortfeasor is the equivalent of the uninsured motorist and should be treated similarly. Both are outside the basic no-fault system of allocating the costs of accidents and both remain subject to tort liability." *Id*

In light of *Tuttle*, the Court finds that even if unloading the trailer constitutes "use" of the trailer for purposes of the no-fault act, a defendant cannot claim immunity under the no-fault act based on the existence of no-fault insurance on a vehicle neither owned nor insured by the defendant. Because Defendant did not pay premiums on the no-fault insurance that covered the trailer, Defendant is not entitled to the benefit of the no-fault act's partial abolition for tort liability with respect to that trailer. For purposes of the accident at issue in this case Defendant was a non-motorist tortfeasor outside the no-fault system who remains subject to tort liability.

**B. Collateral Source Rule**

In the alternative, if Plaintiffs' claim is not barred by the no-fault abolition of tort liability, Defendant requests a declaration that it is entitled to set off any award for economic damages by the amounts paid by the no-fault carrier and the worker's compensation carrier under Michigan's collateral source rule.[2]

Michigan's statutory collateral source rule allows a tort defendant to offset its potential liability with certain benefits received by the plaintiff from a collateral source. Mich. Comp. Laws § 600.6303. The statute provides in pertinent part:

> In a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict. Subject to subsection (5), if the court determines that all or part of the plaintiff's expense or loss has been paid or is payable by a collateral source, the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined pursuant to subsection (2). This reduction shall not exceed the amount of the judgment for economic loss or that portion of the verdict which represents damages paid or payable by a collateral source.

Mich. Comp. Laws § 600.6303(1). "The collateral source rule is designed to prevent double recovery by plaintiffs." *State Auto. Mut. Ins. Co. v. Fieger*, 730 N.W.2d 212, 216 (Mich.

---

[2]Defendant is not seeking summary judgment on this issue. Defendant recognizes that a ruling in its favor on the collateral source rule would not dispose of any of Plaintiffs' claims. Application of the collateral source rule in the manner proposed by Defendant would not preclude Plaintiffs from bringing their claims to the jury, or preclude the jury from issuing an award for such damages. (Dkt. No. 44, Def. Resp. 23 n.16.)

9

2007).

>Certain benefits are excluded from the definition of collateral source:

>As used in this section, "collateral source" means benefits received or receivable from an insurance policy; benefits payable pursuant to a contract with a health care corporation, dental care corporation, or health maintenance organization; employee benefits; social security benefits; worker's compensation benefits; or medicare benefits. **Collateral source does not include** life insurance benefits or **benefits paid by a** person, partnership, association, corporation, or other **legal entity entitled by law to a lien** against the proceeds of a recovery by a plaintiff in a civil action for damages.

Mich. Comp. Laws § 600.6303(4) (emphasis added).

The OBWC contends that because it is entitled by Ohio law to a lien against Plaintiffs' recovery in this action, *see* Ohio Rev. code § 4123.931(A), the benefits paid by the OBWC cannot be used as a collateral source to reduce Defendant's potential no-fault or tort liability in this action.

Defendant recognizes that the collateral source rule does not apply where a valid lien exists, (Dkt. No. 44, Def. Resp. 23 n.15), and Defendant does not challenge the OBWC's assertion that it is entitled by law to a lien against Plaintiffs' recovery. Defendant contends, however, that because a no-fault carrier's recovery rights are limited under Mich. Comp. Laws § 500.3116, a worker's compensation carrier who pays benefits in lieu of no-fault benefits should have its recovery rights similarly limited.

The Court declines to rule on the application of the collateral source rule at this time. Although the OBWC has raised the existence of issues surrounding the collateral source rule

10

in its request for intervention, the OBWC has not yet had an opportunity to fully respond to Defendant's arguments in support of its request for a declaratory ruling regarding the collateral source rule. Furthermore, the Court is not convinced that any ruling at this time will be beneficial when the jury has not reached a verdict and there are outstanding factual issues regarding how much, if any, of the OBWC's payments constitute benefits paid in lieu of no-fault benefits.

### IV.

For the reasons stated herein, the OBWC's motion to intervene will be granted, Plaintiffs' motion for partial summary judgment on Defendant's affirmative defense of tort immunity under the no-fault law will be granted, and Defendant's motion for partial summary judgment will be denied. The Court makes no ruling regarding the application of the collateral source rule.

An order consistent with this opinion will be entered.


Dated: July 19, 2013                                         /s/ Robert Holmes Bell
                                                             ROBERT HOLMES BELL
                                                             UNITED STATES DISTRICT JUDGE